```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                   )
ANDREW BRIAN CLAY,                 )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 17-506-WES
                                   )
A. T. WALL, et al.,                )
        Defendants.                )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Pending before the Court is Defendants' Motion to Dismiss (ECF No. 7) Plaintiff's Complaint (ECF No. 1).  Plaintiff Andrew Brian Clay ("Plaintiff" or "Clay"), a prisoner at the Adult Correctional Institutions ("ACI"), has brought a pro se civil rights action pursuant to 42 U.S.C. § 1983 against Defendants A. T. Wall, Lieutenant Caverhali, Correctional Officer Mitchelle, and Correctional Officer Rugs (collectively "Defendants"),[1] all of whom are sued in their individual and official capacities.  Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted due to Clay's failure to exhaust his administrative

---

[1] In the Motion to Dismiss, the correct spellings of Defendants' names are listed as "Carnevale," "Mitchell," and "Rugg."

remedies at the ACI. For the reasons that follow, the Motion to Dismiss is DENIED.

BACKGROUND

Clay is an inmate at the ACI in Cranston, Rhode Island. Defendants are officials of the Rhode Island Department of Corrections ("RIDOC") and/or officers at the ACI. In a "Statement of Claim" (ECF No. 1-1) attached to his Complaint, Clay alleges that on or about February 25, 2017, correctional officers ("COs") at the ACI used excessive force in the process of "cuffing up" Clay. (Statement of Claim 1.) Clay was injured as a result and was transported to Rhode Island Hospital, where a CT scan was performed and he received a total of seventeen stitches. (Id.) He also lost a tooth. (Id.) Clay attempted to pursue his allegations regarding this incident through the RIDOC Grievance Procedure, but, he states, his attempts to do so were met with opposition from ACI personnel. (Compl. 8-9, ECF No. 1.)

Clay filed the instant Complaint on October 11, 2017.[2] Defendants' Motion to Dismiss and memorandum in support thereof ("Defendants' Mem.") were filed on December 19, 2017. Thereafter, Clay filed a response in opposition ("Response," ECF No. 14), and

---

[2] The Complaint is dated October 11, 2017, and is deemed filed on that date. See Houston v. Lack, 487 U.S. 266, 276 (1988)(concluding that pleadings are deemed filed on date prisoner relinquishes control over documents).

2

Defendants filed a Reply Memorandum ("Defendants' Reply," ECF No. 17) in support of their Motion to Dismiss.

LAW

I.   12(b)(6) Standard

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). "[I]f, under any theory, the allegations are sufficient to state a cause of action in accordance with the law," the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but, instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

In considering a motion to dismiss a prisoner's claim that his constitutional rights have been violated, the court must be guided by the principle that, while "prison officials are to be accorded substantial deference in the way they run their prisons, this does not mean that we will rubber stamp or mechanically accept the judgments of prison administrators." Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 40 (1st Cir. 2007) (citation and internal quotation marks omitted). In addition, this Court has liberally reviewed Plaintiff's allegations and legal claims since they have been put forth by a pro se litigant. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

4

available are exhausted." 42 U.S.C. § 1997e(a). "Section 1997e requires an inmate to exhaust all available administrative processes before filing a federal lawsuit relating to the conditions of his or her confinement, even if some or all of the relief the inmate seeks is not available through the administrative process." Young v. Wall, No. Civ.A. 03-220S, 2006 WL 858085, at *2 (D.R.I. Feb. 27, 2006)(citing Booth v. Churner, 532 U.S. 731, 734 (2001)). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'-rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007)(quoting Ngo, 548 U.S. at 88) (internal citation omitted); see also id. ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). "Non-exhaustion of administrative remedies is an affirmative defense, and the defendants bear the ultimate burden of pleading and proving non-exhaustion." Maraglia v. Maloney, Civil Action No. 2001-12144-RBC, 2006 WL 3741927, at *1 (D. Mass. Dec. 18, 2006)(citing

5

Casanova v. Dubois, 304 F.3d 75, 77 n.3 (1st Cir. 2002)); see also Jones, 549 U.S. at 216 (concluding that failure to exhaust is an affirmative defense under the PLRA).

DISCUSSION

Defendants assert that "there are no genuine issues of material fact and that the Complaint in this civil action filed by the Plaintiff, Andrew Brian Clay . . . , should be dismissed as a matter of law for his failure to exhaust his administrative remedies under the RIDOC Grievance Procedure." (Defendants' Mem. 1, ECF No. 7.) Clay concedes that he did not exhaust his administrative remedies pursuant to the RIDOC Grievance Procedure. (Compl. 8 ("The grievance process was never completed . . . ."); Response 1.)[3]

The RIDOC grievance policy "provides an avenue for inmates to challenge, inter alia, the interpretation and application of the RIDOC's policies, rules, and procedures, individual employee actions, property loss or damage, and any other matter relating to privileges, programs, and/or services, conditions of care or supervision, and living facility conditions." Young, 2006 WL 858085, at *1.

> The grievance policy provides for a three tier review. First, an inmate must seek resolution at the lowest chain

---

[3] Clay initially states that "[n]o grievance has ever been filed regarding these allegations" (Compl. 8), but then says that he "did file 1 greavece [sic] . . . " (Response 1), which was denied (id.).

6

of command.  Second, if the issue is not resolved, the
inmate may submit a grievance to the warden of the
facility where the inmate resides.  Finally, if the issue
is   not   adequately   addressed   to   the   inmate's
satisfaction, the inmate may appeal to the director of
the RIDOC . . . .

Id. (internal citations omitted); see also Cable v. Wall, C.A. No. 09-439 ML, 2011 WL 1211600, at *2 (D.R.I. Mar. 8, 2011); (Mot. to Dismiss, Ex. 2, ECF No. 7-2).

Again, there is no dispute that Clay did not exhaust his administrative remedies pursuant to the ACI's grievance procedure.[4] However, Clay states that "all grivance's [sic] in this matter were met with extreme prejudice and shreaded [sic] in my face by the Officer[]s.  By being ripped up and torn in my face by the Officers."  Compl. 8; see also id. at 9 ("Every measure to shed some light on this incident has resulted in any and all documents being returned to me by the opposing parties.").  Clay further alleges that "[a] process of continued intimidation and threats are being carried out in order to circumvent the process."  (Id. at 9.)  Defendants do not address these allegations in their reply

---

[4] It is unnecessary for the Court to consider the Affidavit of Cory Cloud (ECF No. 7-1), the DOC grievance coordinator, at this juncture since there is no dispute that Clay did not complete the administrative process; therefore, the Court need not convert Defendants' Motion to Dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

7

memorandum, but simply restate their argument that Clay "did not exhaust the RIDOC grievance process prior to filing the instant action." (Defendants' Reply 1, ECF No. 17; see also id. at 2.)

Clay's allegations raise the question of what administrative remedies were truly "available" to him. See 42 U.S.C. § 1997e(a). "To be 'available,' a remedy must be 'capable of use for the accomplishment of a purpose.'" Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011)(quoting Booth, 532 U.S. at 737). Courts within the First Circuit have suggested that "[e]ven post-Ngo, the 'availability' of grievance procedures remains a relevant inquiry." Maraglia, 2006 WL 3741927, at *2 (citing Kaba v. Stepp, 458 F.3d 678, 685 (7th Cir. 2006)); see also Parker v. Robinson, Civil No. 04-214-B-W, 2006 WL 2904780, at *8 (D. Me. Oct. 10, 2006)("I believe that . . . the majority opinion [in Ngo] leaves the door open for Courts to consider the particular circumstances of the case in front of them when resolving a 42 U.S.C 1997e(a) dispute. Certainly Justice Breyer thought so in his Ngo concurrence."[5]); id. at 11 ("[I]f under Ngo it is permissible to

---

[5] In his concurring opinion in Ngo, after noting that there were "well-known exceptions to exhaustion" in administrative and habeas corpus law, Justice Breyer wrote:

> At least two Circuits that have interpreted the statute in a manner similar to that which the Court today adopts have concluded that the PLRA's proper exhaustion requirement is not absolute. See Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004); Giano v. Goord, 380 F.3d 670, 677 (2d 2004). In my view, on remand, the lower

8

estop defendants from asserting non-exhaustion as an affirmative defense based on the correctional institution's handling of a particular grievance, I believe that the doctrine of equitable estoppel could be applied to Parker's case."). More specifically, courts have stated:

> Of course, Perfetto cannot be held accountable for any failure-to-exhaust if prison officials have rendered his administrative remedies unavailable to him. The PLRA is clear that proper exhaustion of administrative remedies is only of those remedies as are available. The test for determining whether administrative remedies are available is objective and asks whether a similarly situated individual of ordinary firmness [would] have deemed them available.

Perfetto v. New Hampshire State Prison, Warden, Civil No. 06-307-JL, 2008 WL 943372, at *6 (D.N.H. Apr. 8, 2008)(alteration in original)(internal citations and quotation marks omitted); see also Robinson v. Gordon, Civil No. 09-cv-083-SM, 2010 WL 1794701, at *3 (D.N.H. May 5, 2010)("There may well be circumstances under which prison officials might be said to have denied an inmate access to the administrative process by, for example, making a concerted and coordinated effort to refuse him access to required forms or by threatening physical violence should he pursue a grievance.")(citing Hemphill v. New York, 380 F.3d 680, 686-88 (2d

---

court should similarly consider any challenges that respondent may have concerning whether his case falls into a traditional exception that the statute implicitly incorporates.

548 U.S. at 104 (Breyer, J., concurring).

9

Cir. 2004); Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005)); Navarro v. Wall, No. C.A. 08-12ML, 2008 WL 4890756, at *3 (D.R.I. Nov. 12, 2008)(noting Parker and Perfetto decisions); cf. Cable, 2011 WL 1211600, at *3 ("Plaintiff does not state that a prison official prevented him from filing a grievance form.").

In Perfetto, the court found that "[o]ther than Perfetto's bare assertions, there is nothing in the record to suggest that he was denied access to the [grievance] forms or dissuaded to a degree that effectively made administrative remedies unavailable to him." 2008 WL 943372, at *6. But Perfetto was a summary judgment case. Here, the Court is faced with a Rule 12(b)(6) motion to dismiss, at which point the Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in favor of Plaintiff.[6] See Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008).

---

[6] To be clear, simply returning a grievance form as "denied" (Response 1), obviously does not render administrative remedies unavailable. Nor does denying a request to go outside the prescribed process for valid institutional reasons. (Compl. 3, Attachment, ECF No. 1-1). If, in fact, Clay chose not to proceed through proper channels, see, e.g., Robinson, 2010 WL 1794701, at *3 (finding that plaintiff had failed to exhaust administrative remedies because after one attempt to obtain grievance form "[p]laintiff was content to let the matter drop . . ."), or misunderstood the process, see Cable, 2011 WL 1211600, at *3 (finding that plaintiff's unfamiliarity with the grievance policy did not justify his failure to comply with procedures and properly exhaust his administrative remedies), he has failed to exhaust his administrative remedies. However, the Court takes seriously Clay's allegations that his forms were torn up and that he was threatened and intimidated in order to "circumvent the process" and prevent him from properly exhausting his administrative remedies. (Compl. 8-9.)

Based on the present record, the Court cannot conclusively find that Clay failed to exhaust "available" administrative remedies. See, e.g., Casanova, 304 F.3d at 77 (after remanding case for further fact-finding regarding whether exhaustion requirement had been met, holding that "PLRA does not mandate dismissal for failure to exhaust, at least not at this prefatory stage of litigation"); Maraglia, 2006 WL 3741927, at *6 (finding that "a dispute of fact remains on whether the internal appellate process was indeed 'available' to Maraglia, and that the record requires further development on this point"). Accordingly, the Motion to Dismiss is DENIED.[7]

CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (ECF No. 7) is DENIED.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
Chief Judge
Date: September 28, 2018

---

[7] As was the case in Casanova, "[n]othing in this opinion, however, is intended to preclude the [Defendants] from appropriately presenting this affirmative defense in any further proceedings." 304 F.3d at 78.

11